# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| DANIEL GILLES<br>C/O Lipson O'Shea Legal Group<br>700 West St. Clair Avenue<br>Suite 110<br>Cleveland, Ohio 44113 | Case No. |
| and | JUDGE |
| CARMEN BATTAGLIA<br>C/O Lipson O'Shea Legal Group<br>700 West St. Clair Avenue<br>Suite 110<br>Cleveland, Ohio 44113 | **COMPLAINT**<br><br>**JURY TRIAL DEMAND** |
| Plaintiff, | |
| vs. | |
| ANN MARIE DONEGAN<br>8845 COLUMBIA ROAD<br>OLMSTED FALLS, OH 44138 | |
| and | |
| WILLIAM TRAINE<br>26673 LOCUST DRIVE<br>OLMSTED FALLS, OH 44138 | |
| and | |
| CITY OF OLMSTED FALLS<br>26100 Bagley Road<br>Olmsted Falls, Ohio 44138 | |
| Defendants. | |

Now comes Plaintiffs Daniel Gilles ("Plaintiff Gilles") and Carmen Battaglia ("Plaintiff Battaglia") ("Plaintiff Gilles and Plaintiff Battaglia being hereinafter collectively referred to as "Plaintiffs") and for their complaint against all of the captioned defendants, hereby aver and allege as follows.

## PRELIMINARY STATEMENT/INTRODUCTION

This is a civil rights action (along with state law causes of action) to redress the unconstitutional actions of the captioned Defendants for depriving Plaintiffs of their procedural and substantive due process rights guaranteed by the United States Constitution by the above captioned defendants.

This suit seeks redress for the malicious, reckless, willful, wanton and purposeful actions of defendant Ann Marie Donegan and William Traine (the "Donegan/Train Defendants") in abusing their political power and status by using toxic, malicious, false and/or private information almost exclusively for:

(a) political gain (all under the color of law), and

(b) retribution and retaliation (all under the color of law) for various other individuals who sought to obtain public records required by Ohio law to be promptly released to the public.

The malicious, reckless, willful, wanton and purposeful actions at issue here are almost entirely the doing of the

2

Defendant/Traine Defendants. However, even after the revelation of the malicious, reckless, willful and wanton actions of the Donegan/Traine Defendants (who are no longer in office and/or employed by the City of Olmsted Falls ("Defendant City")), Defendant City still refuses to take the appropriate action to restore the Plaintiff's reputations which were viciously maligned by the actions of the Donegan/Traine Defendants.

Defendant Donegan and Defendant Traine did all of the actions at issue in this case under the color of law, and Defendant City ratified the conduct of Defendant Donegan and Defendant Traine, and all of the conduct of Defendant Donegan and Defendant Traine and Defendant City involved the employment of the Plaintiffs (see *Piazza v. Cuyahoga Cty.*, 2019-Ohio-2499), and therefore no immunity applies.  Further, executive state and police employees are not entitled to immunity. See *Imbler v. Pachtman*, 424 U.S. 409, 418-19 (1976); *Pierson v. Ray*, 386 U.S. 547, 555 (1967). *Elliot-Park v. Manglona*, 592 F.3d 1003, 1006 (9th Cir. 2010). Further still, local governmental units are not entitled to even qualified-immunity defense to §1983 liability. *See Brandon v. Holt*, 469 U.S. 464, 473 (1985); and *Owen v. City of Independence, Mo.*, 445 U.S. 622, 638 (1980). Further still, municipal employees sued in their official capacity are not entitled to qualified immunity. See *Eng v. Cooley*, 552 F.3d 1062, 1064 (9th Cir. 2009); *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1482 (9th Cir.

1992).

## **PARTIES**

1.   Plaintiff Gilles is a resident of the State of Ohio, Lorain County.

2.   Plaintiff Gilles is, has or was:

   A.   been employed by the Police Department of Defendant City since May 15, 1985, first hired part time then went full time in May 1989 until his departure in June of 2016.

   B.   Was promoted to sergeant in 1993, Executive Sergeant in 1997, and Chief in 2006;

   C.   Is a graduate of Police Executive Leadership College, Certified Law Enforcement Executive, Graduate Northwestern Univ. School of Police Staff and Command Southern Police institute Management of the small Law Enforcement Agency;

   D.   Currently serves (for the past five years) as Chairman of the Southwest Enforcement Bureau, a regional SWAT team comprised of a Tactical Unit, Bomb Squad, Negotiators, Sniper teams, and SWAT Medics for 18 suburban communities in the Southwest quadrant of Cuyahoga County (a team is comprised of

4

officers from all 18 participating agencies and has approximately 100 officers assigned); and

E.   Currently serves as board member in the position of Past President for the Cuyahoga County Police Chiefs Association (served as President in 2014 and on Board for last six years) wherein membership is comprised of Chiefs, and law enforecment administrators from over 50 departments in Cuyahoga County and associate members from the business community; and

F.   the chief of Defendant City while Defendant City was identified as the number 2 safest city in the State of Ohio and the number 3 safest city in the State of Ohio the following year.

3.   Plaintiff Battaglia is, has or was:

A.   been employed by the Police Department of Defendant City since May 1989, bonafide;

B.   promoted to sergeant in 1999 (and was in charge of cruiser maintenance, field training, was a range officer, and arranged police staffing for City parades);

C.   promoted to Lieutenant in May 2006 through a legal and bonafide civil service test and appointment (and my duties as Lieutenant under Chief Gilles were the Daily Operation of the Olmsted Falls

5

Police Department which included scheduling personnel and ordering of equipment and supplies - and was available for all the Police personnel 24 hours a day, 7 days a week);

D.  in charge of the Train report - which was a report documenting blocked crossings affecting traffic in the City of Olmsted Falls;

E.  the officer who initiated Long Rifles in the Department; and

F.  the officer who initiated and was responsible for the first Motorcycle unit and Trucks being utilized as Police Vehicles.

4.  Defendant Ann Marie Donegan ("Defendant Donegan") is a resident of Defendant City, State of Ohio, Cuyahoga County, and was the elected mayor of Defendant City.

5.  Defendant William Traine ("Defendant Traine") is a resident of the State of Ohio, Cuyahoga County, and was once the current un-ratified, non-civil-service commission approved, interim police manager/director (illegally referred to as "police chief") for Defendant City, having been illegally appointed by Defendant Donegan in 2016 without a civil service exam and ratification by the City Council or civil service commission review - in violation of the then-charter of Defendant City and Ohio law (as recently ruled by Judge

6

Daniel Gaul on April 5, 2019 in the matter *William Traine v. City of Olmsted Falls*, Cuyahoga County Common Pleas Case No. CV-18-896234).

6. Defendant City is a charter-based Ohio municipality in Cuyahoga County, Ohio.

## FACTS COMMON TO ALL COUNTS

7. Plaintiffs re-allege all paragraphs of this pleading.

8. Defendant Donegan was elected mayor of Defendant City in 2013.

9. Defendant Donegan had a malicious personal vendetta against the police department of Defendant City and created an extreme hostile working environment for police department employees, including but not limited to Plaintiffs.

10. As part of Defendant Donegan's ongoing malicious vendetta, Donegan attempted to get unqualified police employees, officers and/or police supervisors to be employed by Defendant City without the proper city council ratification and/or civil service commission approval - and in some cases hiring a police officer candidate who had actually failed the civil service test (thereby making it illegal for this prospective officer to be employed by Defendant City).

11. As part of Defendant Donegan's ongoing malicious vendetta, Donegan:

   A. illegally appointed Defendant Traine as a volunteer "reserve officer," and thereafter ordered and demanded that Defendant Traine be included in all commissions and major decision-making procedures directly or indirectly related to the management and operation of the Defendant City's police department; and

   B. Defendant Donegan began to take measured and deliberate steps to malign the Plaintiffs and to force Plaintiff Gilles from Plaintiff Gilles's position as chief of police and to force Plaintiff Battaglia from his employment - and to instill Defendant Traine as the police chief for Defendant City; and

   C. Ordered Defendant Traine (and Defendant Traine complied) to violate RC 2913.04 by running criminal background checks on political opponents.

12. On or about August 2, 2015, at the urgent phone request of Defendant Donegan's sister, members of Defendant City's police department were called to the home of Defendant Donegan in connection with a report of possible domestic violence by Defendant Donegan against her 11-year-old son.

13. On that same date and time, Defendant Donegan refused to permit the police officers entry into the family home and forcibly closed the door to the home, even though the officers indicated that they just wanted to conduct a quick routine duty-bound/mandated welfare check on Defendant Donegan's son.

14. After the sister of Defendant Donegan was made aware of the refusal by Defendant Donegan to permit officer entry into the home, the sister of Defendant Donegan (accompanied by her brother and her brother's wife) came to the police station to play a recording of Defendant Donegan and indicated that they were in fear for the safety of the minor child (given what had been happening with the minor child over the last few days).

15. In order to prevent any appearance of a conflict or possible insider dealing or impropriety, Plaintiff Gilles instructed members of the police department to take the matter to an outside city prosecutor to review the facts and determine if any criminal charges were warranted.

16. Members of the police department then met with an outside prosecutor from a neighboring city, and that prosecutor recommended charges of Domestic Violence against Defendant Donegan.

17. Upon information and belief, the same information was presented to an assistant county prosecutor who also recommended charges of Domestic Violence against Defendant Donegan.

18. After that independent review process, Defendant Donegan was arrested and charged with Domestic Violence and a special prosecutor and an visiting judge were assigned to the case.

19. On or about September 9, 2015, after a pretrial hearing, the visiting judge ruled that a certain audiotape was not admissible, and then the Domestic Violence case against Defendant Donegan was dismissed.

20. After the dismissal of the Domestic Violence charge, Defendant Donegan (with the active assistance of Defendant Traine) accelerated and intensified her vendetta against various members of Defendant City's police department, including but not limited to Plaintiffs, believing (incorrectly) that her arrest and prosecution for Domestic Violence was orchestrated as a response to her vendetta against the police department.

21. As part of the acceleration and intensity, Defendant Donegan began an ongoing campaign of harassment, hostility, unprofessionalism, and outright hatred, against the Plaintiffs and other officers of the police department, including but not limited to changing work

10

hours, changing policies about sick-time and complaint policies and procedures against fellow officers.

19. Plaintiffs and other officers who were the target of this ongoing campaign of harassment began to utilize the union and legal-based grievance processes for complaining about the harassment campaign.

20. As it relates to the Plaintiffs' employment:

   A. On or about **January of 2016**, based upon the ongoing campaign of harassment by Defendant Donegan and Defendant Traine, **Plaintiff Battaglia** separated from employment from Defendant City, and thereafter entered into a January 13, 2016 confidential settlement agreement (the "Battaglia Settlement Agreement") with Defendant City (which was personally signed by Defendant Donegan).

   B. On or about **June 7, 2016**, based upon the ongoing campaign of harassment by Defendant Donegan and Defendant Traine, **Plaintiff Gilles** separated from employment from Defendant City, and thereafter entered into a July 27, 2016 confidential settlement agreement (the "Gilles Settlement Agreement") with Defendant City (which was personally signed by Defendant Donegan); and

21. Both the Battaglia Settlement Agreement and the Gilles Settlement Agreement (collectively the "Settlement Agreements") contained the following unambiguous provisions:

    A.  A confidentiality provision making it unlawful for the parties to discuss in public any aspect of the Settlement Agreement or the facts supporting the Settlement Agreement; and

    B.  A non-disparagement provision mandating that Defendant City and its members/employees not to engage in any false, derogatory, negative or disparaging statements concerning the Plaintiffs.

    Plaintiffs have not attached a copy of the Settlement Agreements because of the confidentiality provisions set forth in the Settlement Agreements. See Ohio Civ.R. 10.

22. During and shortly after this series of events, various citizens and police union representatives actively sought to obtain what are clearly RC 149.43 public records of (A) the documents generated by the Domestic Violence investigation and charges, (B) a secret $450,000.00 settlement obtained by Defendant Donegan against Defendant City (which Defendant Donegan tried to hide from public view during her attempted re-election) and (C) the harassment campaign instituted and prosecuted by Defendant Donegan and Defendant Traine.

12

23.  On or about August 31, 2017, concurrently with the partial release of the long-sought public records, Defendant Donegan (with the assistance of Defendant City employees under her command) ordered and/or instructed Defendant Traine and others under her command to issue and promote a large press/media release (to all of the television and written media news outlets in the Cleveland, Ohio area) wherein Defendant Donegan and Defendant Traine (to obfuscate the public records inquiry and to also promote Defendant Donegan's November 2017 re-election campaign) made statements and/or accusations that were defamation per se against the Plaintiffs and other past and present officers of Defendant City's police department, which allegations included but were not limited to allegations that the Plaintiffs and others had engaged in criminal activity, including but not limited to felony tampering with evidence and obstruction of justice.

24.  Upon information and belief, no one, including Defendant Donegan and Defendant Traine, made any referral to the Cuyahoga County Prosecutor's Office concerning the false allegations of criminal wrongdoing by the Plaintiffs and others, and instead made a large media-only allegation that the Plaintiffs and others had committed crimes.

25. Said allegations of criminal wrongdoing are false and were deliberately designed by Defendant Donegan and Defendant Traine to obfuscate the public records inquiry and to also promote Defendant Donegan's November 2017 re-election campaign.

26. After Defendant Donegan lost her mayoral re-election bid, knowing that various records would be available to new public officials, Defendant Donegan and Defendant Traine destroyed, hid and/or altered various public records, including but not limited computer records and emails and computer records, in an effort to interfere with and/or obstruct what the Donegan/Traine Defendants knew would be a serious administrative and/or criminal investigation of their nefarious conduct while employed with Defendant City (in addition to using city-based LEADS and/or OAG Criminal History databases to spy on political rivals).

## JURISDICTION

27. At all times relevant to the allegations made in this complaint, Defendant Donegan and Defendant Traine were acting in their *individual capacities* **and** were acting in their *official capacity*, and under color of law, and are

being sued here in both their individual capacities and individual capacities.

28. This is an action for compensatory and punitive damages and attorney fees authorized by law to be commenced by a citizen of the United States to redress deprivations under color of law of rights, privileges and immunities secured by the Constitution and laws of the United States, and thus jurisdiction is invoked pursuant to 42 USC §1983,1985 and 1988 et seq and 28 USC §1331 and 28 USC § 1343 (and for state law claims 28 USC §1367); and venue is proper per 28 USC §1391 in that the parties reside, or, at the time the events took place, resided in Cuyahoga County, Ohio (Northern District of Ohio) and the events giving rise to Plaintiffs' claims also occurred in Cuyahoga County, Ohio (Northern District of Ohio), and this Court has personal jurisdiction over the Defendants, all who reside in and conduct business in this District.

29. Defendant City was and is a political subdivision and unit of local government duly organized under the laws of the State of Ohio residing in Ohio acting under the color of law; Defendant City is a "person" under 42 USC §1983; Defendant City was the employer of Defendant Donegan and Defendant Traine and Defendant Donegan and Defendant Traine were at all times prior to their

termination from Defendant City responsible for the policies, practices, and customs of the police department for Defendant City.

30. 42 U.S.C. § 1983 gives a private right of action for plaintiffs to sue for deprivation of constitutional rights; and a person deprives another of a constitutional right within the meaning of § 1983 if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.

31. The Fourteenth Amendment of the United States Constitution prohibits a state from depriving "any person of life, liberty, or property, without due process of law."

## COUNT I
## 1983 - DUE PROCESS REPUTATIONAL LIBERTY INTEREST
### (as to all Defendants)

32. Plaintiffs re-allege all paragraphs of this pleading, and in the context of this Count I allege that Defendant Donegan and Defendant Traine did all of the actions at issue in this case under the color of law and/or that

Defendant City ratified the conduct of Defendant Donegan and Defendant Traine.

33. A person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the Fourteenth Amendment, and this is a clearly established right.

34. Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.

35. The stigmatizing statements made by Defendant Donegan and Defendant Traine were made in conjunction with the Plaintiffs' employment.

36. The statements claimed that the Plaintiffs had committed serious and moral crimes.

37. The stigmatizing statements or charges were made public.

38. The charges made against Plaintiffs were false.

39. The public dissemination by the Defendants was voluntary.

40. Plaintiffs have repeatedly requested a name clearing hearing from Defendant City.

41. As of the filing of this complaint, Defendant City:

   A. Has failed to conduct a name clearing hearing; and/or

B.  Has conducted a name clearing hearing in a wholly insufficient manner so that the process was so meaningless as to have functionally never happened.

42.  Alteration of status or right and/or loss of employment and the right to employment is recognized under Ohio law.

43.  The statements and actions of the Defendants have and will continue to damage the Plaintiffs' personal and business reputation and impair their ability to obtain business and employment in the future.

44.  All of the foregoing actions and statements and actions of Defendant Donegan and Defendant Traine have caused injury to the Plaintiffs' reputation and/or exposes Plaintiffs to public hatred, contempt, ridicule, shame, and/or disgrace or affected them in their trade or business.

45.  All of the foregoing actions and statements have caused economic and non-economic damages to the Plaintiffs, including lost income and/or revenue, humiliation and embarrassment and loss of enjoyment of life.

## COUNT II
### 1983 - SUBSTANTIVE DUE PROCESS VIOLATION
(as to Defendant Donegan and Defendant Traine)

45. Plaintiffs re-allege all paragraphs of this pleading, and in the context of this Count II alleges that Defendant Donegan and Defendant Traine did all of the actions at issue in this case under the color of law and/or that Defendant City ratified the conduct of Defendant Donegan and Defendant Traine.

46. The actions of the Donegan/Traine Defendants were well-planned, egregious, outrageous, arbitrary, shock the conscience and/or offend even hardened sensibilities - from either a subjective or objective state of mind or standpoint.

47. The actions of the Donegan/Traine Defendants were done with malice and were sadistically designed to deliberately harm and damage the professional reputations of the Plaintiffs.

48. The actions of the Donegan/Traine Defendants were done with deliberate indifference to the rights of the Plaintiffs; and the actions of the Donegan/Traine Defendants had no substantial relation to the public health, safety, morals, or general welfare of the residents of Defendant City.

19

49. The actions of the Donegan/Traine Defendants constitute a taking of property without due process and without just compensation, and this is a clearly established right.

50. In addition to the previously mentioned conduct, the Donegan/Traine Defendants had members of the police department for Defendant City contact the Plaintiffs and threaten them with criminal prosecution of the Plaintiffs continued to proceed with their civil claims against the Donegan/Traine Defendants and Defendant City.

51. The actions of the Donegan/Traine Defendants violated various sections of the Ohio revised Code, including: (a) RC 2921.03 (Intimidation), (b) RC 2921.05 (Retaliation), (3) RC 2921.12 (Tampering With Evidence), (4) RC 2921.15 (False Allegation of Police Misconduct), (5) RC 2921.21 (Compounding a Crime), (6) 2921.22 (Failure to Report a Crime), (7) RC 2921.31 (Obstruction of Official Business), (8) RC 2921.32 (Obstruction of Justice), (9) RC 2921.41 (Theft in Office), (10) RC 2909.02 (Disruption of Public Services), (11) RC 2909.05 (Vandalism), (12) RC 2909.06 (Criminal Damaging) and (13) RC 2913.04 (Illegal Use of Computer Database).

52. All of the foregoing actions and statements have caused economic and non-economic damages to the Plaintiffs,

including lost income and/or revenue, humiliation and embarrassment and loss of enjoyment of life.

**COUNT III**
**DEFAMATION**
(against all Defendants)

53. Plaintiffs re-alleges all paragraphs of this pleading, and in the context of this Count alleges that Defendant Donegan and Defendant Traine did all of the actions at issue in this case under the color of law and/or that Defendant City ratified the conduct of Defendant Donegan and Defendant Traine and that all of the conduct of Defendant Donegan and Defendant Traine and Defendant City involved the employment of the Plaintiffs (see Piazza v. Cuyahoga Cty., 2019-Ohio-2499).

54. In order to damage the business and personal reputation of the Plaintiffs and in order to obfuscate the public records inquiry and to also promote Defendant Donegan's November 2017 re-election campaign, Defendant Donegan and Defendant Traine intentionally, recklessly, willfully, and wantonly made patently false statements about the Plaintiffs, including but not limited to:

A.    That Plaintiffs had committed crimes, including but not limited to felony tampering with evidence and obstruction of justice; and

B.    That Plaintiffs and others had orchestrated an illegal and unconstitutional prosecution of Defendant Donegan for Domestic Violence; and

C.    That Plaintiffs had obstructed Defendant Donegan's and Defendant Traine's attempts to reform the police department.

55.  All of these and other statements made by Defendant Donegan and Defendant Traine were false.

56.  All of the statements were published without privilege to third parties.

57.  All of the statements were made with malicious purpose, in bad faith, or in a wanton or reckless manner, with ill-will, willful or wanton misconduct, fault or at least negligence on the part of Defendant Donegan and Defendant Traine.

58.  The statements qualify as defamatory per se or caused special harm to the Plaintiffs.

59.  All of the foregoing actions and statements and actions of Defendant Donegan and Defendant Traine have caused injury to the Plaintiffs' reputation and/or exposes Plaintiffs to public hatred, contempt, ridicule, shame,

and/or disgrace or affected them in their trade or business.

60. All of the foregoing actions and statements have caused economic and non-economic damages to the Plaintiffs, including lost income and/or revenue, humiliation and embarrassment and loss of enjoyment of life.

### COUNT IV
### INVASION OF PRIVACY - FALSE LIGHT
(against all Defendants)

61. Plaintiffs re-allege all paragraphs of this pleading, and in the context of this Count alleges that Defendant Donegan and Defendant Traine did all of the actions at issue under the color of law and/or that Defendant City ratified the conduct of Defendant Donegan and Defendant Traine and that all of the conduct of Defendant Donegan and Defendant Traine and Defendant City involved the employment of the Plaintiffs (see Piazza v. Cuyahoga Cty., 2019-Ohio-2499).

62. Defendants purposely, intentionally, recklessly, willfully, and wantonly engaged in the foregoing actions containing many false and defamatory statements about the Plaintiffs, thereby giving great publicity to these statements with their subsequent publication and trying

and allowing said statements to be read, on an ongoing basis, by a large number of people.

63. The Defendants' statements placed Plaintiffs before the public in a false light.

64. The Defendants' statements are highly offensive to a reasonable person.

65. The Defendants were at fault and knew or was reckless to the falsehood of the statements.

66. All of the Defendants' conduct in publishing the aforementioned false statements was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiffs, which has caused and continues to cause Plaintiffs to suffer substantial economic and non-economic damages, permanent harm to Plaintiffs' professional and personal reputation, and severe mental anguish and emotional distress.

67. The Defendants engaged in the above-described actions recklessly, maliciously, and intentionally entitling Plaintiffs to an award of statutory, compensatory, and other damages.

## COUNT V
## BREACH OF CONTRACT
(against Defendant City)

68.  Plaintiffs re-alleges all paragraphs of this pleading.

69.  Plaintiffs and Defendant City entered into the Settlement Agreements.

70.  Plaintiffs have fully complied with all aspects of the Settlement Agreements.

71.  Defendant City breached the Settlement Agreements through the malicious, self-serving and/or defamatory actions of Defendant Donegan and Defendant Traine as set forth above.

72.  Defendant City has ratified the actions of Defendant Traine and Defendant Donegan by failing or refusing to refute or condemn said actions and by failing to independently investigate and/or attempt to verify the allegations made by Defendant Traine and/or Defendant Donegan.

73.  Said breach and/or actions has caused injury to the Plaintiff's reputation and/or exposes Plaintiff to public hatred, contempt, ridicule, shame, and/or disgrace or affected him in his trade or business.

74.  Said breach and/r actions has caused economic and non-economic damages to the Plaintiffs, including lost

income and/or revenue, humiliation and embarrassment
and loss of enjoyment of life.

**COUNT VI**
**SPOLIATION OF EVIDENCE**
(as to Defendant Donegan and Defendant Traine)

75.  Plaintiffs re-allege all paragraphs of this pleading.

76.  The    Donegan/Traine    Defendants    intentionally,
premeditatedly, willfully and/or deliberately destroyed
a large amount of evidence to be used in these legal
matters.

77.  There was pending or probable litigation involving the
Plaintiffs.

78.  There was knowledge on the part of the Donegan/Traine
Defendants that litigation exists or is probable.

79.  There was intentional and/or willful destruction of
evidence by the Donegan/Traine Defendants designed to
disrupt the Plaintiffs' case, with evil intent and with
bad motive and purpose.

80.  Said destruction caused disruption of Plaintiffs' case.

81.  Plaintiffs have suffered damages proximately caused by
said destructive acts.

WHEREFORE, Plaintiffs are entitled to a judgment as follows:

1.   As to all Counts I, III, IV, and V, Plaintiffs demand judgment against all Defendants, jointly and severally, in an monetary amount in excess of $25,000.00, together with interest and costs.

2.   As to all Counts II and VI, Plaintiffs demand judgment against Defendant Donegan and Defendant Traine, jointly and severally, in an monetary amount in excess of $25,000.00, together with interest and costs.

3.   As to Counts I and II, Plaintiffs demand attorney fees as permitted by federal[1] and Ohio law.

4.   As to all Counts against Defendant Donegan and Defendant Traine, Plaintiffs demand punitive damages.

5.   As to all counts, Plaintiffs demand court costs, discovery costs, attorney fees and interest to the extent permitted by law.

6.   Any and all relief permitted by law and equity.

---

[1]   42 U.S.C. § 1988(b) provides for an award of attorney's fees to prevailing parties if the action is brought under certain enumerated statutes, including § 1983. *See Sole v. Wyner*, 551 U.S. 74, 77 (2007), and see 28 U.S.C. § 2412.

***TRIAL BY JURY ON ALL CLAIMS FOR RELIEF HEREBY DEMANDED.***

        Respectfully submitted;

        LIPSON O'SHEA LEGAL GROUP

        ***/s/ Michael J. O'Shea***
        Michael J. O'Shea, Esq. (0039330)
        michael@lipsonoshea.com
        The Hoyt Block Building
        Suite 110
        700 West Saint Clair Avenue
        Cleveland, Ohio 44113
        (216) 241-0011
        (440) 331-5401 - fax
        **Attorney for Plaintiffs**